DAA7MENP

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   UNITED STATES OF AMERICA,

4                 v.                        13 CR 31 (KBF)

5   MARCOS MENDEZ PEREZ,

6                 Defendant.

7   ------------------------------x

8                                    New York, N.Y.
                                     October 10, 2013
9                                    1:11 p.m.

10
    Before:
11
                    HON. KATHERINE B. FORREST,
12
                                     District Judge
13

14                          APPEARANCES

15
    PREET BHARARA,
16       United States Attorney for the
         Southern District of New York
17  REBECCA MERMELSTEIN
         Assistant United States Attorney
18
    NEIL B. CHECKMAN
19       Attorney for Defendant

20
    ALSO PRESENT:  MANUEL M. CASTRO, Spanish Interpreter
21

22

23

24

25

DAA7MENP

```
 1              (In open court)

 2              THE DEPUTY CLERK:  In the matter of United States of

 3    America v. Marcos Mendez Perez, 13 CR 31.

 4              Counsel, please state your names for the record.

 5              MS. MERMELSTEIN:  Good afternoon, your Honor.

 6              Rebecca Mermelstein for the government.

 7              THE COURT:  Good afternoon, Ms. Mermelstein.

 8              MR. CHECKMAN:  Good afternoon, your Honor.

 9              Neil Checkman for Marcos Mendez Perez.

10              THE COURT:  Good afternoon, Mr. Checkman.

11              And the Court notes that Mr. Mendez Perez is present

12    here in court this afternoon.

13              Good afternoon, sir.

14              We are assisted this afternoon with the services of a

15    Spanish-to-English interpreter.  I'd ask my deputy to please

16    swear the interpreter.

17              (Interpreter sworn)

18              THE COURT:  Mr. Mendez Perez, I see that you're

19    wearing the equipment that helps you hear the interpretation.

20    If at any point in time the equipment malfunctions, let your

21    lawyer know or wave your hand and we'll make sure it gets fixed

22    right away.  It's very important that you hear everything

23    that's going on today.

24              I have received a copy of both a signed waiver of

25    indictment, but also a Pimentel letter and a superseding
```

DAA7MENP

1    information.

2           So as I understand it, we've got three things on the

3    agenda:  First we need to determine whether or not the

4    defendant, in fact, knowingly and voluntarily waives his right

5    to proceed by way of indictment.  If so, then we will arraign

6    him on the superseding information.  And then after we've done

7    that, we'll proceed to determine whether or not he would like

8    to enter a plea.  And that's the agenda I've got.

9           Does anybody have anything additional or different on

10   the agenda?

11          MS. MERMELSTEIN:  No, your Honor.

12          MR. CHECKMAN:  No, your Honor.

13          THE COURT:  All right.  Well, then we'll proceed with

14   each of those things in that order.

15          Let me start then by going through the preliminaries

16   for the waiver of indictment.

17          Now, Mr. Mendez Perez, what we are going to do is

18   determine whether or not you, in fact, waive your right to

19   proceed by way of indictment.  And I'll explain what that is

20   and how that differs from an information.  I'm sure your lawyer

21   has already, but I'll explain it to you again.  If you have any

22   questions at all about this or about any other matter that we

23   cover today, please either ask your lawyer, or your lawyer can

24   ask the Court additional clarification, or you can ask the

25   Court for additional clarification.  All right?

DAA7MENP

```
1              I want to make sure that your mind is clear right now,
2       and that you understand these proceedings, both so that we can
3       be sure that you're knowingly and voluntarily waiving your
4       right to proceed by way of indictment, should you choose to do
5       so, and also should you choose to enter a plea today, we want
6       to make sure you understand all of the potential consequences
7       that flow from that and the rights that you have.  All right?
8              So I'm going to have my deputy place you under oath
9       because I want to make sure -- I'm going to ask you some
10      questions.  I want to make sure your mind is clear.
11             So, Mr. Pecorino, please place the defendant under
12      oath.
13             (Defendant sworn)
14             THE DEPUTY CLERK:  Please state your full name for the
15      record.
16             THE DEFENDANT:  Marcos Mendez Perez.
17             THE COURT:  Mr. Mendez Perez, do you understand that
18      you are now under oath, which means that you have to answer my
19      questions truthfully; and if you don't answer truthfully, you
20      can be separately prosecuted for perjury?
21             THE DEFENDANT:  Yes.
22             THE COURT:  How old are you, sir?
23             THE DEFENDANT:  Forty-two years old.
24             THE COURT:  And where were you born?
25             THE DEFENDANT:  Puebla, Mexico.
```

DAA7MENP

1           THE COURT:  Are you a United States citizen?

2           THE DEFENDANT:  No, I'm Mexican.

3           THE COURT:  Do you understand that if you plead

4    guilty, deportation back to Mexico is presumptively mandatory?

5           THE DEFENDANT:  Yes.

6           THE COURT:  And do you understand that at the very

7    least, there can be serious adverse immigration consequences

8    that can result from a guilty plea?

9           THE DEFENDANT:  Yes.

10          THE COURT:  What's the highest level of education that

11    you achieved?  The highest level of school that you went to.

12          THE DEFENDANT:  I got up to the ninth grade, but I

13    wasn't able to finish.

14          THE COURT:  Can you read and write Spanish?

15          THE DEFENDANT:  Yes.

16          THE COURT:  Are you married, sir, or have you been

17    married?

18          THE DEFENDANT:  I am married.

19          THE COURT:  Does your wife live in the United States?

20          THE DEFENDANT:  No, in Mexico.

21          THE COURT:  Do you have any children?

22          THE DEFENDANT:  Five children.

23          THE COURT:  How old are they?

24          THE DEFENDANT:  The oldest one is 20, 19, 18, 16, 13.

25          THE COURT:  All right.  Have you ever been treated for

DAA7MENP

1    a drug addiction either in the United States, in Mexico, or

2    anywhere else?

3              THE DEFENDANT:  No, never.  No, no.

4              THE COURT:  Have you ever been treated for an alcohol

5    problem either in the United States, Mexico, or anywhere?

6              THE DEFENDANT:  No, never.

7              THE COURT:  Have you ever been treated for any kind of

8    mental illness or emotional problem in the United States,

9    Mexico, or anywhere?

10             THE DEFENDANT:  No.

11             THE COURT:  Do you take any kinds of medicine on a

12   regular basis?

13             THE DEFENDANT:  No.

14             THE COURT:  In the last 24 hours, have you taken any

15   kind of medications at all?

16             THE DEFENDANT:  No, no, nothing.

17             THE COURT:  In the last 24 hours, have you had any

18   alcoholic beverages?

19             THE DEFENDANT:  No.

20             THE COURT:  Is there anything about your medical

21   history that you think the Court should know that you believe

22   affects your ability to understand what's going on in court

23   right now?

24             THE DEFENDANT:  No.

25             THE COURT:  Do you understand why we are here today?

DAA7MENP

1           THE DEFENDANT:  Yes.

2           THE COURT:  Is your mind clear right now?

3           THE DEFENDANT:  Yes.

4           THE COURT:  All right.  Does either counsel have any

5   doubt as to the competency of the defendant to waive his right

6   to proceed by way of indictment, should he choose to do so, and

7   to enter a plea, should he choose to do so later in these

8   proceedings?

9           MS. MERMELSTEIN:  No, your Honor.

10          MR. CHECKMAN:  None whatsoever, your Honor.

11          THE COURT:  The Court does find that Mr. Mendez Perez

12  answers my questions very directly with very responsive

13  answers, and he is certainly competent to consider the matters

14  that we are going to go over today, to waive his right to

15  proceed by way of indictment, should he choose to do so, and to

16  enter a plea, should he choose to do so later today.

17          Mr. Mendez Perez, what we are going to do next is talk

18  about what a waiver of indictment means.  I have received a

19  copy of a form in English that is called a waiver of indictment

20  form.  An indictment is a document which contains charges

21  against you that is issued by a grand jury, and signed by the

22  foreperson of the grand jury and the U.S. Attorney after

23  evidence has been presented to the grand jury.  And if the

24  grand jury then decides, determines, that there is sufficient

25  evidence to indict someone, the charges against that defendant

DAA7MENP

1    are contained in a document that's called an indictment.

2              Do you understand that?

3              THE DEFENDANT:  Yes.

4              THE COURT:  All right.  Now, an information, and the

5    superseding information which I have here against you, is

6    different.  It is not an indictment.  It is signed only by the

7    U.S. Attorney.

8              Do you understand that?

9              THE DEFENDANT:  Yes.

10             THE COURT:  And what that means is that the evidence

11   against you that has been set forth in the superseding

12   information was not presented to the grand jury.

13             Do you understand that?

14             THE DEFENDANT:  Yes.

15             THE COURT:  There is a serious charge contained in the

16   superseding information against you.  And you have a right to

17   have the evidence related to that charge presented to a grand

18   jury to see whether the grand jury would agree that there's

19   sufficient evidence to have you indicted for this charge.

20             Do you understand that?

21             THE DEFENDANT:  Yes.

22             THE COURT:  Have you discussed these matters with your

23   lawyer?

24             THE DEFENDANT:  Yes.

25             THE COURT:  I'm going to show you this waiver of

DAA7MENP

1   indictment form which I have received, and ask you whether or

2   not this is your signature on the form.

3            We'll mark it as Court Exhibit 1.

4            THE DEFENDANT:  Yes, it is.

5            THE COURT:  And, Mr. Mendez Perez, when you signed

6   this form, did you sign it after having had it translated to

7   you into Spanish?

8            THE DEFENDANT:  Yes.

9            THE COURT:  When you signed this form, did you

10  understand that you were giving up your right to proceed by way

11  of indictment, and instead were agreeing voluntarily to proceed

12  by way of information?

13           THE DEFENDANT:  Yes.

14           THE COURT:  Based upon the defendant's answers to my

15  questions, I find that he has voluntarily and knowingly waived

16  his right to proceed by way of indictment, and has agreed to

17  proceed by way of information.

18           What we're going to do now, Mr. Mendez Perez, is

19  arraign you now on the superseding information.  But I'm not

20  going to ask you for a plea on the superseding information yet.

21  What I'm going to do is go through some preliminary matters,

22  and then I'm going to go through a bunch of rights that you

23  have, and ask you for a plea only towards the end.  All right?

24           Have you seen a copy of the superseding information

25  that contains the charge against you?

DAA7MENP

1              THE DEFENDANT:  Yes.

2              THE COURT:  And have you had an opportunity to have it

3    translated for you into Spanish?

4              THE DEFENDANT:  Yes.

5              MR. CHECKMAN:  Your Honor, I just want, so the record

6    is clear, I've provided the defendant with a Spanish copy of

7    the information.

8              THE COURT:  All right.  Thank you.

9              And have you had an opportunity to speak to your

10   lawyer about the charge contained against you in the

11   superseding information?

12             THE DEFENDANT:  Yes.

13             THE COURT:  And do you understand that in Count One,

14   you are charged with a conspiracy to promote, manage, or

15   facilitate prostitution?

16             THE DEFENDANT:  Yes.

17             THE COURT:  Would you like to have the Court read the

18   charge against you here now in open court?

19             THE DEFENDANT:  No.

20             THE COURT:  All right.  Before I ask you to enter a

21   plea, what I'm going to do is go through some other rights that

22   you have.

23             Do you understand that you have a right to a lawyer

24   now and at every stage of the proceedings against you?

25             THE DEFENDANT:  Yes.

DAA7MENP

| | |
|---|---|
| 1 | THE COURT:  And do you understand that if you went to |
| 2 | trial, that means you would have a right to a lawyer at that |
| 3 | trial, and if you couldn't afford a lawyer, a lawyer would be |
| 4 | appointed for you? |
| 5 | THE DEFENDANT:  Yes. |
| 6 | THE COURT:  And you're represented by Mr. Checkman; is |
| 7 | that right? |
| 8 | THE DEFENDANT:  Yes. |
| 9 | THE COURT:  And are you satisfied with his |
| 10 | representation of you? |
| 11 | THE DEFENDANT:  Yes, yes, very much. |
| 12 | THE COURT:  Have you had an opportunity to discuss the |
| 13 | charges against you with Mr. Checkman, any defenses you may |
| 14 | have to that charge, and the consequences that might flow from |
| 15 | entering a guilty plea to that charge? |
| 16 | THE DEFENDANT:  Yes. |
| 17 | THE COURT:  Now, I want to talk to you about your |
| 18 | right to a trial on the charge contained in the superseding |
| 19 | information; because if you plead guilty to that charge, you |
| 20 | will be giving up your right to a trial. |
| 21 | Do you understand that? |
| 22 | THE DEFENDANT:  Yes. |
| 23 | THE COURT:  And do you understand as you sit here |
| 24 | right now, you have not yet pled guilty to that charge; you |
| 25 | could still go to trial.  Do you understand that? |

DAA7MENP

1          THE DEFENDANT:  Yes.

2          THE COURT:  The only time you're going to give up your

3     right to go to trial is if and when you ever enter a guilty

4     plea.  All right?  If you don't enter a guilty plea, you retain

5     your right to go to trial.

6          Do you understand?

7          THE DEFENDANT:  Yes.

8          THE COURT:  Under the laws of the United States and

9     the U.S. Constitution, you are entitled to a right to a trial,

10     a jury trial, of the charge contained against you in the

11     superseding information.

12          Do you understand that?

13          THE DEFENDANT:  Yes.

14          THE COURT:  And at that trial, a jury of 12 people

15     would have to agree unanimously that you were guilty of the

16     charge contained in the superseding information before they

17     could return a verdict of guilty against you.

18          Do you understand that?

19          THE DEFENDANT:  Yes.

20          THE COURT:  And during any trial on the superseding

21     information, witnesses for the government would have to come to

22     court and testify in your presence, and Mr. Checkman would have

23     an opportunity to cross-examine those witnesses.  And he would

24     have an opportunity to object to evidence offered by the

25     government, and also he could subpoena witnesses to come to

DAA7MENP

1    court to testify on your behalf, and to offer evidence on your

2    behalf.

3                Do you understand those things?

4                THE DEFENDANT:  Yes.

5                THE COURT:  And at a trial, you would have a right to

6    testify, but you would also have a right not to testify if you

7    chose not to testify.

8                Do you understand that?

9                THE DEFENDANT:  Yes.

10                THE COURT:  And if you chose not to testify, the jury

11    would be instructed that they could not draw any inference or

12    suggestion of guilt from the fact that you did not testify.

13                Do you understand that?

14                THE DEFENDANT:  Yes.

15                THE COURT:  Do you understand that at a trial, you

16    would never have to prove that you were innocent; the

17    government would bear the burden of proof throughout the trial,

18    and they would have to prove that you were guilty beyond a

19    reasonable doubt before you could be found guilty.

20                Do you understand that?

21                THE DEFENDANT:  Yes.

22                THE COURT:  Now, if you plead guilty to Count One, you

23    will be giving up your right to go to trial.

24                Do you understand that?

25                THE DEFENDANT:  Yes.

DAA7MENP

```
 1              THE COURT:  And I would later sentence you based upon
 2    that guilty plea and based upon other information I receive
 3    from the government, from the probation office, and from your
 4    lawyer.
 5              Do you understand that?
 6              THE DEFENDANT:  Yes.
 7              THE COURT:  Now, I want to talk about the charge
 8    that's contained in Count One and the possible consequences
 9    that could flow from entering a guilty plea to that charge.
10              As we discussed a moment ago, you're charged with one
11    count of conspiracy to promote, manage, or facilitate
12    prostitution.
13              Do you understand that?
14              THE DEFENDANT:  Yes.
15              THE COURT:  And do you understand that the maximum
16    term of imprisonment associated with that charge is five years?
17              THE DEFENDANT:  Yes.
18              THE COURT:  And that there's also a maximum term of
19    supervised release of three years?
20              THE DEFENDANT:  Yes.
21              THE COURT:  And that there's a maximum fine of the
22    greatest of $250,000, twice the gross pecuniary gain derived
23    from the offense, or twice the gross pecuniary loss to persons
24    other than yourself resulting from the offense, and a $100
25    mandatory special assessment.
```

DAA7MENP

1          Do you understand that?

2          THE DEFENDANT:  Yes.

3          THE COURT:  And do you understand that the Court, in

4     addition to imposing a fine, could possibly also order

5     restitution and forfeiture, if appropriate?

6          THE DEFENDANT:  Yes.

7          THE COURT:  Do you understand that in this letter that

8     the government has provided to you dated September 29th, 2013,

9     the government has provided its estimate of a potential

10    guidelines range for you, a sentencing guidelines range for

11    you, but that the government's estimate is not binding on the

12    Court?

13         Do you understand that?

14         THE DEFENDANT:  Yes.

15         THE COURT:  The letter that the government provided to

16    your lawyer and to you is called a Pimentel letter.  And it

17    simply provides the government's estimation as to what your

18    offense level is and your Criminal History Category is, among

19    other things.  But the Court must separately determine the

20    appropriate offense level for you and your Criminal History

21    Category before your sentencing.

22         Do you understand that?

23         THE DEFENDANT:  Yes.

24         THE COURT:  Now, that could mean that when I calculate

25    your offense level, Mr. Mendez Perez, I could come up with a

DAA7MENP

1  higher offense level than what the government has told you they

2  have calculated, or a lower level offense level than what the

3  government has calculated.

4        Do you understand that?

5        THE DEFENDANT:  Yes.

6        THE COURT:  Now, in this letter that the government

7  has provided to you, they have calculated your offense level as

8  20 and your Criminal History Category as I.

9        Do you understand that?

10       THE DEFENDANT:  Yes.

11       THE COURT:  And that corresponds in the back of this

12 book which I'm holding up, which is a book called the

13 sentencing guidelines, that offense level of 20 and I

14 corresponds to a potential imprisonment range -- potential --

15 of 33 to 41 months.

16       Do you understand that?

17       THE DEFENDANT:  Yes.

18       THE COURT:  But do you understand that if the Court

19 came up with a higher offense level, the Court is not bound by

20 what the government has set forth; the Court would look to the

21 sentencing guidelines range associated with its calculation of

22 the offense level?

23       Do you understand that?

24       THE DEFENDANT:  Yes.

25       THE COURT:  The Court ultimately cannot impose a

DAA7MENP

1    sentence that is greater than the statutory maximum of five

2    years.

3              Do you understand that?

4              THE DEFENDANT:  Yes.

5              THE COURT:  Has anybody promised you what your

6    sentence is going to be?

7              THE DEFENDANT:  No.

8              THE COURT:  Has anybody promised you that you will not

9    be sentenced to a term of imprisonment if you plead guilty?

10             THE DEFENDANT:  No.

11             THE COURT:  Has anybody promised you that you will not

12   be sentenced to prison; that you will be sent home immediately

13   if you plead guilty?

14             THE DEFENDANT:  No.

15             THE COURT:  Do you have any agreement with the

16   government at all?

17             THE DEFENDANT:  No.

18             THE COURT:  So do you understand that if your sentence

19   ends up being different from what you hope it will be or expect

20   that it might be, if you plead guilty, you will be bound by

21   your plea, and you won't be able to withdraw your plea?

22             Do you understand that?

23             THE DEFENDANT:  Yes.

24             THE COURT:  Now, it's very important that if you

25   maintain a desire to potentially want to plead guilty to the

DAA7MENP

1  count in the superseding information, that you're doing so

2  voluntarily; that nobody is forcing you to plead guilty.

3        Has anybody forced you or threatened you in any way to

4  plead guilty?

5        THE DEFENDANT:  No, no one.

6        THE COURT:  Now, if you want to plead guilty, you'll

7  have to give up your right not to incriminate yourself because

8  it's very important that if you decide to plead guilty, you're

9  pleading guilty because you are, in fact, guilty, and for no

10  other reason.

11        Do you understand that?

12        THE DEFENDANT:  Yes.

13        THE COURT:  So now what I want to do is to ask

14  Ms. Mermelstein to tell us what the elements are of the

15  offense, and then I'm going to ask you, Mr. Mendez Perez, to

16  tell the Court, after she's done talking, why you think you're

17  guilty of this charge.

18        MS. MERMELSTEIN:  The defendant is charged with

19  conspiring to violate the Travel Act.  Accordingly, in order to

20  prove that the defendant committed the offense charged, the

21  government would have to prove first that the defendant

22  traveled or caused someone else to travel interstate, or used

23  or caused someone else to use an interstate facility; second,

24  that the travel or the use of an interstate facility was done

25  with the intent to promote, manage, establish, or carry on, or

DAA7MENP

1    to distribute the proceeds of an unlawful activity; and, third,

2    that the interstate travel or the use of an interstate facility

3    that -- excuse me.  Third, that after the interstate travel or

4    use of the interstate facility the defendant performed or

5    attempted to perform an act in furtherance or distributed the

6    proceeds of that same unlawful activity.

7            Here, sending a wire transfer of prostitution proceeds

8    or making a phone call concerning prostitution would qualify as

9    a use of an interstate facility.  And if the government

10   proceeded to trial, it would prove that the defendant had used

11   both of those interstate facilities, in particular, that he

12   worked in a Poughkeepsie brothel where he used his cell phone

13   to communicate with another person working in the brothel about

14   the arrival of customers for the brothel, and that he sent

15   prostitution proceeds from his work in the brothel to his

16   family in Mexico.

17           (Continued on next page)

18

19

20

21

22

23

24

25

DAA7MEN2

1          THE COURT:  All right.  As I understand, Ms.

2    Mermelstein, from the superseding information, the defendant is

3    charged with conspiracy?

4          MS. MERMELSTEIN:  That's right.

5          THE COURT:  All right.  OK.  So, Mr. Mendes Perez.

6    Why don't you tell the court in your words why you think you

7    are guilty of Count One.

8          MR. CHECKMAN:  Your Honor, if the Court pleases, prior

9    to coming to court today, and in preparation of the anticipated

10   plea, I, together with a certified Spanish interpreter, visited

11   Mr. Mendez Perez at the Metropolitan Detention Center.  We went

12   over a prospective plea allocution, your Honor, which we

13   believe -- and after consultation with the government, they

14   believe -- will satisfy the necessities of the statute, and we

15   would ask the court's permission to read that in Spanish.

16         THE COURT:  He can certainly read that in Spanish.  It

17   will be translated, and then I will ask you some questions to

18   be sure that you agree with every word, but we'll do that

19   afterwards.

20         THE DEFENDANT:  Beginning in October of 2012 until

21   April of 2013, in Poughkeepsie, New York, I entered into an

22   agreement with other people for me to work as a person in

23   charge of the door of a brothel in Poughkeepsie, New York, this

24   way promoting prostitution in this brothel.  And I did use a

25   cell phone for that purpose.

DAA7MEN2

1          THE COURT:  All right.

2          Now, Poughkeepsie is in Dutchess County.  What is the

3   proffer of venue?

4          MS. MERMELSTEIN:  It is in the Southern District of

5   New York.

6          THE COURT:  OK.

7          MS. MERMELSTEIN:  I should note that the conspiracy

8   that's charged here at large involved brothels as well in

9   Yonkers and Newburgh, which are also in the Southern District

10  of New York, and that many of the defendants lived in Queens

11  and traveled from there likely through the Southern District of

12  New York, so I think venue is covered on multiple fronts.

13         MR. CHECKMAN:  And for our part, your Honor, we would

14  concede venue in the Southern District of New York.

15         THE COURT:  All right.  Thank you.  Now, Mr. Mendes

16  Perez, do you understand every word of what you just read to

17  the court?

18         THE DEFENDANT:  Yes.

19         THE COURT:  What does promoting prostitution mean to

20  you?

21         THE DEFENDANT:  To obtain money, to make money for a

22  purpose.

23         THE COURT:  All right.  And did you understand you

24  were furthering a prostitution enterprise when you were doing

25  what you were doing?

1          THE DEFENDANT:  Yes.

2          THE COURT:  OK.  Ms. Mermelstein, do you believe there

3    is a sufficient factual basis for a plea?  I understand that

4    the wiring of the money is not part of this allocution, but the

5    use of a cell phone I think is there.

6          MS. MERMELSTEIN:  I don't think that the defendant can

7    allocute to every possible method.  I would say he used his

8    cell phone on multiple occasions since it requires its use, the

9    promotion and then its use again.

10         THE COURT:  All right.  Mr. Mendez Perez, did you use

11   your cell phone in connection with your work at the brothel on

12   more than one occasion?

13         THE DEFENDANT:  Yes.  Yes.

14         THE COURT:  Did you use it multiple times in

15   connection with that work?

16         THE DEFENDANT:  Yes.

17         THE COURT:  All right.  Ms. Mermelstein, do you

18   believe there is now a sufficient factual predicate for a plea

19   of guilty, should the defendant choose to enter one?

20         MS. MERMELSTEIN:  I do.

21         THE COURT:  Mr. Checkman, do you have any reason that

22   you know of why your client should not enter a plea of guilty,

23   should he choose to do so?

24         MR. CHECKMAN:  No, your Honor.

25         THE COURT:  All right.  Mr. Mendez Perez, it's now

DAA7MEN2

1    time for you to make your final decision.  As I told you, there

2    would come a point in the proceedings when I would ask you for

3    your formal plea.

4              If you plead guilty, you will give up your right to go

5    to trial, as I have described to you; and you know all the

6    possible consequences that could come from entering a guilty

7    plea.  But I am now going to ask you how do you plead to Count

8    One of the superseding information?  Guilty or not guilty?

9              THE DEFENDANT:  Guilty.

10             THE COURT:  Since you acknowledge that you are in fact

11   guilty of the crime that is charged in Count One of the

12   superseding information, and since I am satisfied that you know

13   of your rights, including your right to go to trial, and that

14   you understand the consequences that flow from entering a

15   guilty plea, and that you are pleading guilty voluntarily, I

16   accept your plea.

17             What we will do now is we will set a date for your

18   sentencing.  That takes a little while, because the probation

19   office will want to interview you.  They will prepare something

20   called a presentence investigation report -- it goes by the

21   name PSR -- which they will then provide to the court.  It will

22   tell me a fair amount about the crime, the role that you played

23   in the overall crime, where you fit into the picture, as well

24   as some information specifically about you.

25             Mr. Checkman, will you facilitate that interview?

DAA7MEN2

1        MR. CHECKMAN:  I will, your Honor, and wish to be

2   present during that interview.

3        THE COURT:  Thank you.  And, Mr. Checkman, if you do

4   not receive a copy of the PSR 40 days prior to the sentencing

5   date -- which I will give you in a moment -- will you let the

6   court know?  And I will try to shake it loose so you can have

7   it within 35 days of the sentencing date.

8        MR. CHECKMAN:  I will, your Honor.

9        THE COURT:  The sentencing date that we currently have

10  is January 31, 2014 at 11 a.m.  Does that work?

11        MR. CHECKMAN:  Yes, your Honor.

12        MS. MERMELSTEIN:  Yes, your Honor.

13        THE COURT:  That would make the defense submission due

14  on January 17 and the government submission due on January 24.

15        And, Mr. Checkman and Ms. Mermelstein -- I think,

16  Ms. Mermelstein, you may have heard this before, but,

17  Mr. Checkman, so you understand my practice, I try very hard to

18  keep sentencing dates.  I protect them as much as possible on

19  my calendar, and I will have scheduled it around other things,

20  even right now; so, to the extent you can try to protect it as

21  well.  I understand you will have things that will come up, and

22  you will be ordered to be places that you may have no control

23  over, but to the extent you can control it, if you can try to

24  protect that date, I will be most appreciative.

25        MR. CHECKMAN:  I will give it my best efforts, your

DAA7MEN2

1    Honor.

2           THE COURT:  Now, Mr. Mendez Perez, you will receive a

3    draft of this PSR and have a chance to go through it with your

4    lawyer before it ever comes to the court.  If you notice any

5    errors in it, raise them with Mr. Checkman so that he can raise

6    them with the court, or have the probation office change them,

7    if they will.  All right?

8           Is there anything else that should be done at this

9    time?

10          MS. MERMELSTEIN:  No, your Honor.

11          MR. CHECKMAN:  Nothing from the defense, your Honor.

12          THE COURT:  Thank you.  We are adjourned.

13          MR. CHECKMAN:  Thank you.

14          (Adjourned to January 31, 2014 at 11:00 a.m.)

15

16

17

18

19

20

21

22

23

24

25